PSM-183                                                    NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-1010
_____

CHEN FENG WU,
                                        Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                        Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A099-930-540)
Immigration Judge: Honorable Eugene Pugliese

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
September 1, 2010

Before: FUENTES, GREENAWAY, JR. and VAN ANTWERPEN, Circuit Judges

(Opinion filed September 8, 2010)
_____

OPINION
_____

PER CURIAM.

        Chen Feng Wu, a native and citizen of China, petitions this Court for review of a

final order of removal entered by the Board of Immigration Appeals ("BIA").  We will

deny the petition for review.

Wu entered the United States in 2006 without inspection. The Department of Homeland Security served a Notice to Appear charging removability under INA § 212(a)(6)(A)(i) for being present without being admitted or paroled. In proceedings before the Immigration Judge ("IJ"), Wu conceded removability as charged, and he sought relief from removal in the form of asylum, withholding of removal, and Convention Against Torture ("CAT") protection.

Wu's written asylum application and his testimony before the IJ established that he married in China in 1996, and that he and his wife have one child, a son born in January 1997. Wu claims that, in July 1997, his wife was forced to have an IUD inserted. In September 1999, it was discovered during a routine examination that the IUD was missing, and that Wu's wife had become pregnant. Wu claims that his wife was taken to a family planning station and forced to undergo an abortion. Wu learned only after the abortion that his wife had been pregnant. Wu's wife had another IUD inserted. Wu then decided to leave for the United States so that he and his wife could avoid China's population control policies. His wife and son remain in China.

Wu's first three attempts to leave China were unsuccessful. In September 2000, he was arrested in Laos and repatriated. He was detained for 23 days and fined 27,000 RMB, which his sister paid. In January 2001, Wu was arrested at Hong Kong International Airport and detained in Changle City. Wu claims that the police beat him

while in custody. He was released after his brother paid a 5,000 RMB fine. In November 2003, Wu was again arrested at Hong Kong International Airport. This time, the authorities released him without punishment. Finally, on the fourth attempt, Wu was smuggled out of China in January 2006, and he entered in the United States, apparently through the Canadian border, shortly thereafter.

Wu claims to fear returning to China because he or his wife will be forcibly sterilized should they have another child, as they wish to do. He also claims that he will be "fined, jailed, beaten, and tortured" for having repeatedly attempted to leave, and ultimately having left, China illegally with the assistance of smugglers.

The IJ denied Wu's applications for relief, finding no showing of past persecution or of a well-founded fear of future persecution either because of China's population control policies or because Wu left illegally. The IJ also found no showing that Wu had been tortured in the past or is likely to face torture in the future. The BIA agreed with the IJ's findings and analysis, and it dismissed Wu's appeal. Wu timely filed a petition for review in this Court.

## II.

We have jurisdiction under 8 U.S.C. § 1252(a)(1). When, as here, "the BIA both adopts the findings of the IJ and discusses some of the bases for the IJ's decision, we have authority to review the decisions of both the IJ and the BIA." Chen v. Ashcroft, 376 F.3d 215, 222 (3d Cir. 2004). This Court reviews factual findings for substantial

evidence, a deferential standard that requires us to deem those findings "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

Wu's first argument before this Court is that he presented sufficient evidence of a well-founded fear of future persecution. He contends that, if he and his wife have another child in China, as they wish to do, at least one of them will be forcibly sterilized. The BIA rejected this claim as "too speculative to establish a well-founded fear of future persecution." A.R. at 7. It noted that Wu is not currently in violation of China's family planning policies, that he has not shown that officials are seeking him out as a result of his wife's pregnancy and abortion, and that while Wu claims that he would like to have more children, he currently has only one child.

Our review of the record does not compel a contrary conclusion. Wu had the burden to show both that he has a genuine subjective fear of future persecution, and that, as an objective matter, a reasonable person in his circumstances would fear persecution in China. See Zubeda v. Ashcroft, 333 F.3d 463, 469 (3d Cir. 2003). Wu has not argued that there is a "pattern or practice" of persecuting similarly situated individuals, see 8 C.F.R. § 1208.13(b)(2)(iii)(A), and thus to meet his burden, he had to show a reasonable possibility that officials would single him out for persecution. Id. § 1208.13(b)(2)(iii). We agree with the government, see Respondent's Brief at 23, that Wu's fear of future persecution is fairly characterized as "too speculative," as it is based on several

4

unsupported assumptions about future events, including whether his wife will have the IUD removed, whether she will get pregnant, whether officials will discover the pregnancy, and whether they will in fact seek to sterilize Wu because of the pregnancy. In short, Wu's stated desire to have another child, even viewed in light of the record regarding China's coercive family planning policies, does not establish an objectively reasonable possibility that he will be singled out for forcible sterilization upon return.

Wu next argues that he made a sufficient showing that he suffered past persecution due to his wife's forced abortion. The record, however, supports the BIA's findings that Wu made no showing that he personally was harmed on account of his wife's abortion, or that he engaged in "other resistance" to family planning policies. See Lin-Zheng v. Att'y Gen., 557 F.3d 147, 157 (3d Cir. 2009) (en banc) (explaining that spouse "can claim refugee status if he/she can demonstrate actual persecution for resisting a country's coercive family planning policy, or a well-founded fear of future persecution for doing so"). Wu's contention that he is eligible for asylum based on his wife's experience of having suffered a forced abortion is foreclosed as a matter of law. As this Court explained in Lin-Zheng, "there is no room ... to conclude that Congress intended to extend refugee status to anyone other than *the individual* who has ... been forced to submit to an involuntary abortion[.] Had Congress wished to extend protection to that person's spouse, it could easily have defined 'refugee' to include the person persecuted as

well as his or her spouse." Id. at 156.[1]

Wu also argues that he has a well-founded fear that he will persecuted or even tortured for having attempted to leave China, and then having left, with the assistance of smugglers. This argument lacks record support. Wu did not show that he suffered harm rising to the level of persecution after his three failed attempts to depart. See Fatin v. INS, 12 F.3d 1233, 1243 (3d Cir. 1993) (explaining that persecution "is an extreme concept that does not include every sort of treatment our society regards as offensive."). Wu has not shown that he will now suffer harm rising to that level upon return from his fourth illegal departure. Wu suggests that, because he left due to his opposition to population control policies, his "illegal departure will cause the Chinese government to

---

[1] Wu raises four additional arguments in support of his claim that he suffered persecution in China due to the population control policies: (1) the persecution of close family members constitutes persecution of Wu himself; (2) he suffered persecution due to the "murder of his unborn child"; (3) he suffered persecution due to "emotional harm from the abortion"; and (4) the forced abortion was tantamount to persecution for the couple's "political opinion," namely, their desire to have more children in opposition to population control policy. The record reflects Wu failed to raise and exhaust administrative remedies on arguments (1) and (2) before the BIA. Consequently, this Court lacks jurisdiction to review those arguments. See 8 U.S.C. § 1252(d)(1). We are satisfied that arguments (3) and (4) were raised and exhausted in Wu's brief to the BIA, see A.R. at 22-23, but those contentions lack merit. As the BIA found, "the personal difficultly [Wu] has experienced as a result of his wife's forcible abortion ... does not rise to the level of persecution." A.R. at 2. Further, Wu's claim that he and his wife were persecuted for expressing political opposition to family planning policy lacks record support. Wu learned of his wife's pregnancy only after she was forced to have the abortion, and the pregnancy also was unknown to Wu's wife prior to its discovery by officials. See A.R. at 16. Wu has failed to show that the forced abortion can be attributed to an expression of political opposition to the one-child policy, rather than simply the couple's accidental violation of the law.

impute on him a subversive political opinion, for which he will be severely punished" upon return. Petitioner's Br. at 29. However, as the BIA found, Wu has not made the critical showing that "a protected ground was or will be at least one central reason for the harm he experienced or fears in the future." A.R. at 8 (citing INA § 208(b)(i)(B)(i)); see also Ndayshimiye v. Att'y Gen., 557 F.3d 124, 130 (3d Cir. 2009) (explaining that "asylum may not be granted if a protected ground is only an 'incidental, tangential, or superficial' reason for persecution of an asylum applicant"). Wu has not established that his political opinion will be "at least one central reason" for any harm he might suffer for having departed without permission. Nor has he shown that the law criminalizing illegal departure is based on a protected ground, or that the punishment for illegal departure would rise to the level of persecution. This record does not compel a finding that Wu suffered persecution or will be persecuted for leaving China illegally.

To the extent that Wu argues his withholding of removal claim in his brief to this Court, the BIA did not err in holding that Wu failed to establish eligibility for withholding in light of his failure to satisfy the lesser burden of proof for asylum. See Lukwago v. Ashcroft, 329 F.3d 157, 182 (3d Cir. 2003).

Finally, as to the CAT claim, the BIA found that Wu failed to show that he was tortured in the past for departing illegally, that he likely would be tortured in the future for his attempts to depart or his actual departure, or that officials would target him for torture as a result of his wife's pregnancy or abortion. Wu relies upon the same arguments

7

discussed above to suggest that he likely faces torture upon return to China. Petitioner's Br. at 39-40. For the reasons already stated, substantial evidence in the record supports the BIA's adverse finding on the CAT claim, as well.

Based on the foregoing, we will deny the petition for review.